UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| PAULA DUPONT, BRENDA MIERS | **CIVIL ACTION NO. 18-9892** |
| Plaintiffs, | |
| v. | |
| ST. JOSEPH'S HEALTHCARE SYSTEM, INC. ST. JOSEPH'S WAYNE HOSPITAL, ST. JOSEPH'S REGIONAL MEDICAL CENTER. | **COMPLAINT** |
| Defendants. | **JURY DEMANDED** |

---

Plaintiffs, PAULA DUPONT and BRENDA MIERS ("Plaintiffs"), by and through their undersigned counsel, EISENBERG & BAUM, LLP, files this Complaint against Defendant, ST. JOSEPH'S HEALTHCARE SYSTEM ("SJHS") and ST. JOSEPH'S WAYNE HOSPITAL, ("SJWH"), ST. JOSEPH'S REGIONAL MEDICAL CENTER ("SJRM") (each a "Defendant," and together the "Defendants" or "St. Joseph's Healthcare"), and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff, Paula DuPont is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. Over the course of several days when Ms. DuPont was admitted to St. Joseph's Regional Medical Center, Defendants discriminated against Ms. DuPont by failing and/or refusing to provide auxiliary aids and services necessary to facilitate and ensure effective communication them on or about June 6, 2016 through June 9, 2016, part of June 10, 2016, and part of June 12,

1

2016 and June 13, 2016. Specifically, Defendant failed to accommodate Ms. DuPont by repeatedly denying her requests for qualified in-person ASL interpreter. As a result, Plaintiffs was unable to understand Ms. DuPont's medical condition or the treatment she received for the majority of her medical care received by St. Joseph's Healthcare beginning with the Emergency Room and continuing while admitted to the hospital.

2. Plaintiff, Brenda Miers is a Deaf individual who primarily communicates in American Sign Language, which is her expressed, preferred, and most effective means of communication. Ms. Miers is Ms. DuPont's partner. Throughout Ms. DuPont's care, Defendant's failed to accommodate Ms. Miers by repeatedly denying her requests for a qualified in-person ASL interpreter. As a result, Ms. Miers had to act as an ad-hoc interpreter and often could not understand what was being communicated throughout Ms. DuPont's care, due to the lack of effective auxiliary aids and services provided by Defendants.

3. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and no substitute for direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said. Despite this, St. Joseph's Healthcare physicians and staff often relied on this ineffective means of communication instead of properly accommodating Plaintiffs disability.

4. Video Remote Interpreting (VRI) is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when the patient has other conditions that impair the patient's ability to

utilize the device (i.e., if the patient has a visual impairment, is in a lot of pain, or cannot achieve the proper posture); when there are many people in a room; when staff is inadequately trained to set up or operate the device; or in situations that are especially complicated or emergent. Despite this, Defendants often forced Plaintiffs to utilize a nonfunctioning VRI, or to use VRI when it was not appropriate to do so and each with no prior knowledge or context, instead of properly accommodating her disability by providing qualified in-person ASL interpreters.

5. Reliance by deaf individuals upon family members or friends to interpret medical communications for them has been found to be unwise and dangerous, insofar as family members are generally not trained to act as interpreters, particularly in medical and hospital settings. Family members often are untrained in accurately and precisely interpreting and conveying to the deaf individual the full and complete content of medical communications. In addition, family members are generally too personally and emotionally involved with the deaf patient to act impartially with the emotional detachment that is necessary of qualified sign language interpreters, particularly in medical settings and communications. Here, despite Ms. Miers being Deaf herself, Defendants knowingly and with deliberate indifference attempted to utilize Ms. Miers as an interpreter for Ms. DuPont.

6. Plaintiffs bring this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' health care services. Plaintiffs seek declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. and its implementing regulation, 28 C.F.R. Part 36; Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794; ; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12; and other state and common law causes of action.

7. Based on Plaintiffs; allegations herein, it is evident that Defendants have failed to implement policies and procedures and to train their employees regarding the civil rights and communication needs of deaf individuals. Plaintiffs bring this action to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication and a meaningful opportunity for deaf individuals to participate in and benefit from Defendants' health care services. Plaintiffs were denied this opportunity, as further alleged herein.

## THE PARTIES

8. Plaintiff PAULA DUPONT brings this action and is an individual residing at 1911 Duke Drive, Woodbridge, New Jersey 07095. Plaintiff is deaf, primarily communicates in American Sign Language, and is substantially limited in the major life activities of hearing and speaking within the meaning of federal and state anti-discrimination laws.

9. Plaintiff BRENDA MIERS brings this action and is an individual residing at 1911 Duke Drive, Woodbridge, New Jersey 07095. Plaintiff is deaf, primarily communicates in American Sign Language, and is substantially limited in the major life activities of hearing and speaking within the meaning of federal and state anti-discrimination laws.

10. Defendant, St. Joseph's Healthcare System, Inc. at all times hereinafter mentioned, has been licensed and doing business in the State of New Jersey with a principal place of business at 703 Main Street, Paterson, New Jersey.

11. Defendant, St. Joseph's Regional Medical Center does business in the state of New

Jersey, with a principal place of business at 703 Main Street, Paterson, New Jersey.

12. Defendant St. Joseph's Wayne Hospital does business in the state of New Jersey, with a principal place of business at 224 Hamburg Turnpike, Wayne, New Jersey 07470. St.

13. Defendants own or operate places of public accommodation under federal and state antidiscrimination laws and are recipients of federal financial assistance. Thus, it is subject to the requirements of the ADA, ACA, Section 504 of the Rehabilitation Act and the New Jersey Law Against Discrimination.

## JURISDICTION & VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims arising under state and local law.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants reside within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this district.

## STATEMENT OF FACTS

16. Ms. DuPont is a deaf individual who primarily communicates in American Sign Language (ASL).

17. Ms. Miers is a Deaf individual who primarily communicates in American Sign Language.

18. Ms. Miers is Ms. DuPont's partner.

19. On or about June 4, 2016, was seriously injured after falling down at an amusement park.

20. On or about June 6, 2016, Ms. DuPont was treated at St. Joseph's Emergency Department and subsequently admitted to St. Joseph's Regional Medical Center.

21. Ms. Miers, accompanied Ms. DuPont throughout her stay.

22. On or about June 6, 2016, Ms. DuPont and Ms. Miers requested an in-person qualified ASL interpreter; however, one was not provided.

23. On or about June 7, 2016, Ms. DuPont and Ms. Miers requested a live ASL interpreter; however, one was not provided. Instead, Defendant provided Ms. DuPont and Ms. Miers with a malfunctioning Video Recorder Interpreter (VRI). The VRI was ineffective because the interpreter had difficulty understanding Ms. DuPont. In addition, the device subsequently failed to work. At that time, Ms. DuPont attempted to communicate with two doctors by writing notes; however, one of the doctors did not write anything in response to her notes, and the other wrote only a few words. Neither made any attempt to communicate further with Ms. DuPont and left the room, visibly frustrated at their inability to communicate with her.

24. On or about June 8, 2016, Ms. DuPont and her partner, Brenda Miers, again requested an interpreter; however, none was provided.

25. Defendants attempted to rely on Ms. Miers to interpret however, Ms. Miers is deaf and is not a qualified interpreter and does not possess the vocabulary necessary to communicate in a medical setting.

26. Ms. DuPont was in pain, and was confused about what was happening to her, but was unable to obtain any relief because of the lack of effective communication.

27. The next day, on or about June 9, 2016, Ms. DuPont again requested an interpreter. Despite these continuing requests, Defendants instead forced Ms. DuPont to write notes. Ms. DuPont remained confused and distraught, as no interpreter or any other form of auxiliary aid was provided to her at any point during the day.

28. On or about June 10, 2016, Ms. DuPont had an MRI. No interpreter was provided

for the procedure.

29. On June 11, 2016, repeated requests for an interpreter were made by Ms. DuPont and Ms. Miers but no interpreter was provided.

30. On or about June 12, 2016, Ms. DuPont and Ms. Miers again requested an interpreter; however, was told by medical staff she would not receive one. An interpreter subsequently arrived around noon that day.

31. Upon, information and belief, Ms. DuPont was never given a clear diagnosis and did not receive any explanation for symptoms she was having due to lack of ineffective communication with medical staff.

32. On or about June 13, 2016, Ms. DuPont was taken out of St. Joseph's by Ms. Miers and admitted to JFK Medical Center Emergency Department where Ms. DuPont was admitted and provided with a in-person interpreter while receiving medical treatment for the next two weeks.

33. Because of the lack of effective communication, Ms. DuPont experienced greater stress, fear and anxiety than she would have if her disability had been accommodated.

34. With the exception of June 12, 2016, Defendants did not provide Plaintiffs with adequate auxiliary aids and services to enable them to effectively communicate with Defendants' staff, despite Plaintiffs request for an onsite ASL interpreter.

35. Plaintiffs were unable to understand the procedures Ms. DuPont underwent or critical information about the medication she was provided.

36. Plaintiff wrote to Defendants to complain about the way she was treated, and she received a response from the Director of Admission Services.

37. In the letter, Ms. DiPasquale states: "During the first few days of your hospitalization, we provided Curacom Rover as a form of communication. However, because of

your past experiences, you preferred to have a live interpreter. To accommodate your request, you were provided with a live a live interpreter for the remainder of your hospitalization from the hours of 6:00 a.m. through 11:00 p.m. each day."

38.     The letter does not comprehend that Plaintiffs did not have a qualified interpreter the majority of her time Ms. DuPont was admitted and had very little understanding of what medical treatment she needed for her injury..

39.     Based on Plaintiffs experiences, St. Joseph's Healthcare does not regularly hire qualified in-person sign language interpreters upon request as a matter of policy and practice.

40.     Defendants, as health care providers, knew or should have known of its obligations under the ADA, Section 504, Patient Protection and Affordable Care Act and the New Jersey Law Against Discrimination to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing.

41.     Defendants, as health care providers, knew or should have known that it had an obligation to individuals who are deaf or hearing impaired under the ADA, Patient Protection and Affordable Care Act, Section 504 and the New Jersey Law Against Discrimination to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including but not limited to the provision of an ASL interpreter, to ensure effective communication.

42.     Defendant's and its physicians and staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiffs greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

43.     As a result of the actions and/or inactions of St. Joseph's Healthcare and its physicians and staff, Plaintiffs were denied information that is readily and routinely provided to

persons who can hear, including: the reasons for her admission and treatment given; the purposes of the treatments being provided; the common risks and/or benefits of surgery and treatments given; the common risks, side effects, and benefits of the medication given, as well as the specific dosage range for the medications given; alternative available treatments; the approximate length of Ms. DuPont's care; the potential side effects of stopping treatment; and/or aftercare instructions, including information regarding any need to continue treatments or arrangements needed to be made for follow up care.

44. As a result of the actions and/or inactions of St. Joseph's Healthcare and its physicians and staff, Plaintiffs were denied the same opportunities that are readily and routinely provided to persons who can hear to make decisions regarding treatments and/or to give consent to such treatments.

45. St. Joseph's Healthcare failure to provide onsite qualified sign language interpreters made Ms. DuPont's hospitalization more difficult because it prevented effective communication between her, Ms. Miers and Defendants' staff.

46. In most instances, effective communication between Plaintiffs and Defendant could not have taken place without the aid of a qualified Sign Language interpreter.

47. Defendants knowingly limited Plaintiffs to the little communication they could achieve through vague gestures, cryptic notes, and the few words Plaintiffs could understand through reading lips.

48. Due to Defendants refusal to provide effective communication, diagnoses and treatment options were not explained in a meaningful way to Plaintiffs, and many times Ms. DuPont was forced to sign consent forms and undergo procedures without fully understanding the risks and benefits thereof.

Case 2:18-cv-09892-ES-MAH   Document 1   Filed 05/30/18   Page 10 of 19 PageID: 10

49. Defendants' wrongful and intentional discrimination against Plaintiffs on the basis of disability is reflected by the Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

50. Based on Plaintiffs observations of Defendants' conduct, the refusal to offer onsite ASL interpreting services is the result of a policy or practice of Defendants to discourage the use of onsite interpreters without regard to whether other methods will provide effective communication.

51. Based on Defendant's previous denial of effective communication for Plaintiffs, it is reasonably foreseeable that Defendant will fail to accommodate Plaintiffs or other deaf individuals in the future, as Defendant's conduct is part of a discriminatory and deliberately indifferent policy, pattern, and/or practice.

52. Plaintiffs are aware of discriminatory barriers to access at St. Joseph's Healthcare and is thereby deterred from accessing its' healthcare services because of the discrimination they have faced and expect to face in the future.

53. Defendants intentionally discriminated against Plaintiffs and acted with deliberate indifference to their communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

**FIRST CAUSE OF ACTON:  VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

54. Plaintiffs repeats and realleges all preceding paragraphs in support of this claim.

55. At all times relevant to this action, Title III of the ADA, 42 U.S.C. §§ 12181, et seq. was in full force and effect and applied to Defendants' conduct.

56. At all times relevant to this action, the United States Department of Justice

regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendants' conduct.

57. At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of hearing and speaking, and is therefore an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

58. Defendants own, leases, and/or operates a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(F).

59. Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

60. Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefit to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A).

61. Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

62. Defendants discriminated against Plaintiffs on the basis of their disability by: (1) denying Plaintiff an equal opportunity to participate in and benefit from St. Joseph Healthcare's goods, services, facilities, privileges, advantages, and/or accommodations, in violation of 42 U.S.C. § 12182(b)(1)(A); and (2) failing to ensure effective communication through the provision of onsite qualified sign language interpreters, in violation of 42 U.S.C. § 12182(b)(2)(A).

63. On information and belief, the refusal to offer onsite interpreter services is the result

of a policy or practice of St. Joseph's Healthcare to prohibit or impede the use of onsite qualified sign language interpreters without regard to whether other methods will provide effective communication.

64. As set out above, absent injunctive relief there is a clear risk that Defendants actions will recur with Plaintiffs and additional patients.

65. Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

66. Plaintiffs repeats and re-alleges all preceding paragraphs in support of this claim.

67. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 was in full force and effect and applied to Defendants' conduct.

68. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, were in full force and effect and applied to the Defendants' conduct.

69. At all times relevant to this action, Plaintiffs have had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

70. At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendants hospital is a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

71. Pursuant to Section 504 of the Rehabilitation Act, "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be exclude from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794.

72. Defendants discriminated against Plaintiffs, solely on the basis of their disability, by denying them meaningful access to the services, programs, and benefits St. Joseph's Healthcare offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

73. On information and belief, the refusal to offer onsite ASL interpreter services is as a result of a policy or practice of St. Joseph's Healthcare to prohibit or impede the use of onsite qualified sign language interpreters without regard to whether other methods will provide effective communication.

74. As set out above, absent injunctive relief there is a clear risk that Defendants actions will recur with Plaintiffs and/or other deaf patients or family members.

75. Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

76. Plaintiff are further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

**THIRD CAUSE OF ACTION: VIOLATIONS OF
SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT**

77. Plaintiffs repeats and realleges all preceding paragraphs in support of this claim.

78. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and applied to the Defendant's conduct.

79. At all times relevant to this action, Plaintiffs have had substantial limitations to the

major life activities of hearing and speaking, and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

80. At all times relevant to this action, Defendants received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

81. Pursuant to Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

82. As set forth above, Defendants discriminated against Plaintiffs, on the basis of disability, in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

83. The Patient Protection and Affordable Care Act, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a).

84. Plaintiffs are therefore entitled to injunctive relief, as well as compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

85. Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a) and/or common law.

86.

## FOURTH CAUSE OF ACTION: THE NEW JERSEY LAW AGAINST DISCRIMINATION VIOLATIONS

87. Plaintiffs repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

88. At all times relevant to this action, the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. §§ 10:5-1, et seq., was in full force and effect and applied to the Defendant's conduct.

89. At all times relevant to this action, Plaintiffs have been a person with a disability within the meaning of N.J.S.A. §§ 10:5-5(q) and 10:5-5(w).

90. At all times relevant to this action, Defendants facilities were places of public accommodation within the meaning of N.J.S.A. § 10:5-5(l).

91. Pursuant to N.J.S.A. § 10:5-12(f)(1), it shall be unlawful discrimination "for any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of . . . disability."

92. Plaintiffs are aggrieved persons within the meaning of N.J.S.A. § 10:5-13, which extends relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his or her disability.

93. Defendants discriminated against Plaintiffs on the basis of their disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of their place of public accommodation and equal opportunity to participate in and benefit from Defendant's health care services in violation of N.J.S.A. § 10:5-1,

15

et seq.

94. Defendants further discriminated against Plaintiffs by failing to ensure effective communication through the specific provision of a qualified in-person interpreter.

95. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiffs and/or additional Deaf persons.

96. Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged pursuant to N.J.S.A. § 10:5-13.

97. Plaintiffs are further entitled to an award of punitive damages pursuant to N.J.S.A. § 10:5-3.

98. Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to N.J.S.A. § 10:5-27.1.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that St. Joseph's Healthcare's policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the New Jersey Law Against Discrimination;

b. Enjoin St. Joseph's Healthcare from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

c. Order St. Joseph's Healthcare:

i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by St. Joseph's Healthcare;

iii. To develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that St. Joseph's Healthcare will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event St. Joseph's Healthcare utilizes a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing patients are able to communicate through the most

        appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

    vi. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

    vii. to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Rehabilitation Act and the NJLAD;

    viii. to train all its employees, staff, and other agents on a regular basis about St. Joseph's policy regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing patients;

d. Award to Plaintiffs:

    i. Compensatory damages pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act and the New Jersey Law Against Discrimination;

    ii. Reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act and the New Jersey Law Against Discrimination;

    iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    iv. Any and all other relief that this Court finds necessary and appropriate.

**JURY DEMAND**

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

                                            Respectfully submitted,

                                            EISENBERG & BAUM, LLP

By: _____
Andrew Rozynski, Esq.
Attorneys for Plaintiffs
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700
arozynski@eandblaw.com